# United States Court of Appeals for the Federal Circuit

04-1262, -1290

IMONEX SERVICES, INC.,

Plaintiff-Appellant,

v.

W. H. MUNZPRUFER DIETMAR TRENNER GMBH,
ALLIANCE LAUNDRY SYSTEMS, L.L.C., AMERICAN DRYER, INC.,
MAYTAG CORPORATION, and THE DEXTER COMPANY,

Defendants-Cross Appellants.

Gregory M. Luck and Thomas W. Sankey, Sankey & Luck, L.L.P., of Houston, Texas, argued for plaintiff-appellant. With Gregory M. Luck on the brief was Michael T. McLemore. Of counsel was Randy J. McClanahan, McClanahan & Clearman, L.L.P., of Houston, Texas.

Scott F. Partridge, Baker Botts LLP, of Houston, Texas, argued for defendants-cross appellants. With him on the brief were Gene Spears, R. William Beard, Jr., Michael Hawes, and Amanda Woodall Mayor.

Appealed from: United States District Court for the Eastern District of Texas

Judge T. John Ward

# United States Court of Appeals for the Federal Circuit

04-1262,-1290

IMONEX SERVICES, INC.,

Plaintiff-Appellant,

v.

W.H. MUNZPRUFER DIETMAR TRENNER GMBH,
ALLIANCE LAUNDRY SYSTEMS, L.L.C., AMERICAN DRYER, INC.,
MAYTAG CORPORATION, and THE DEXTER COMPANY,

Defendants-Cross Appellants.

_____

DECIDED:   May 23, 2005

_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and BRYSON, Circuit Judge.

RADER, Circuit Judge.

A jury decided that Imonex's U.S. Patents No. 4,911,280 (the '280 patent) and No. 5,988,349 (the '349 patent) were valid, enforceable, and willfully infringed, and awarded damages of $10,350,000 to Imonex.  The United States District Court for the Eastern District of Texas later denied the defendants' JMOL motions of non-infringement and non-willfulness, but found that the jury had not heard sufficient evidence for the damages award.  Therefore, the trial court ordered and held a second trial on damages. The second jury awarded damages of $1,396,872 to Imonex.  The district court also declared this an "exceptional case" and awarded attorney fees to Imonex.  Imonex appeals the district court's finding that a second trial was necessary because of insufficient evidence; the

exclusion of certain testimony of its damages expert in the first trial; and the inclusion of the testimony of the defendants' damages expert in the second. The defendants cross-appeal the district court's denial of their JMOL motions as well as the award of attorney fees to Imonex.  Because the judgments and decisions of the trial court are supported by the record, this court affirms.

I.

The '280 and '349 patents claim coin selectors.  These particular inventions differentiate between coins of different diameters.  In the claimed devices, a coin enters the selector at the top of a vertical or near-vertical coin race.  This race holds the coin on edge.  A protrusion on one side wall of the race deflects the coin toward an opening on the opposite wall.  If the coin is equal to or smaller than the opening in diameter, it falls through; otherwise it continues down the race.  Claims 24, 25, and 29 of the '280 patent claim the protrusion feature in the following terms:

> a coin deflecting protrusion situated along the primary coin race and positioned downstream from the inlet portal and proximate the aperture, said protrusion having a contact edge laterally protruding toward said aperture so as to deflect coins traveling down the primary coin race toward the aperture.

Claim 2 of the '349 patent claims the same feature as "a means for applying a lateral force."  Claim 4 in the same patent claims "a first curvilinear protrusion."

The district court construed the "coin deflecting protrusion" as "a surface which extends or juts into the primary coin race so as to engage <u>each</u> coin as the coin proceeds downwardly in the primary coin race" (Emphasis added).  The district court also noted that the "first curvilinear protrusion" means a surface that

"contact[s] <u>each</u> coin." (Emphasis added).

The defendants argue that the W2000 coin selector cannot infringe the patents in suit because some coins do not contact the protrusion. In other words, "each coin" does not hit the protrusion. As evidence, the defendants offered the testimony of their own experts, and also that of Imonex's expert, who stated under cross-examination that he was not sure that the protrusion in the W2000 device would act to move every coin toward the aperture. On the other side, Imonex asserts that the credibility of the defendant's technical expert was undermined by his own cross-examination testimony, that the testimony of Munzprufer's owner on infringement was self-serving, and that its own expert's testimony was only the truthful admission that if an infinite number of coins were introduced into the coin slot, it is possible that one or more coins might not engage the protrusion.

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." <u>Summit Tech., Inc. v. Nidek Co.</u>, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the United States Court of Appeals for the Fifth Circuit, "[a] jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did." <u>Hiltgen v. Sumrall</u>, 47 F.3d 695, 699-700 (5th Cir. 1995). On this record, substantial evidence from Imonex's expert supports the verdict of infringement. This court affirms the denial of JMOL on this issue.

The defendants dispute the district court's denial of JMOL on the jury's verdict of willful infringement. Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement. Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc). Actual notice of another's patent rights triggers an affirmative duty of due care. See Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109 (Fed. Cir. 1986). Constructive notice, as by marking a product with a patent number, is insufficient to trigger this duty. See Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998). This court has identified several criteria for assessing damages, including, inter alia, whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and the duration of defendant's misconduct. Read Corp. v. Portec, Inc., 970 F.2d 816, 826-28 (Fed. Cir. 1992).

Willful infringement in this case hinges on when the defendants had actual knowledge of Imonex's patent rights, and their actions after that time. The record shows that Imonex disclosed its coin selection devices to employees of the original equipment manufacturer, or OEM, defendants at trade shows years before it filed suit. Those Imonex devices were marked with the numbers of both of the patents in suit. Imonex also distributed advertising literature which stated that the products were patented. Imonex corresponded with employees of the OEMs about use of the patented devices in the OEMs' products. The record also

disclosed that none of the OEM defendants commissioned an opinion of counsel about infringement, until after they were sued for infringement. The defendants do not deny that Imonex displayed its properly marked products at trade shows, but insist that this notice was insufficient to trigger its duty of due care, because no defendant employees with decision-making capacity received notice or studied the patents themselves. The jury could have reasonably concluded that several instances recounted in the record triggered the OEM's duty of care. Those instances that provide actual notice to the OEMs of the patents on Imonex's products include Imonex's display of its products at trade shows, the widespread distribution of literature depicting the products as patented, and correspondence with OEM employees about the use of patented devices in the OEM products.

The defendants also argue that they exercised their duty of due care by obtaining opinions of counsel regarding possible infringement of the patents in suit shortly after being served with the complaint. Imonex argues that the defendants should have obtained these opinions as soon as they learned of their possible infringement of Munzprufer's patents. This issue is informed, however, by this court's recent decision in Knorr-Bremse, which was decided shortly after the briefs in this case were submitted. In that case, the affirmative duty of due care to avoid infringement was reiterated, but it was found no longer appropriate to draw an adverse inference with respect to willful infringement from failure to obtain legal advice. Knorr-Bremse, 383 F.3d at 1345-46. Therefore, while early receipt of legal advice would have strengthened the defendants' argument that

they had not willfully infringed, failure to have solicited such advice does not give rise to an inference of willfulness. Overall, the jury had substantial evidence to find willfulness, and this court affirms the district court's denial of JMOL on this point.

Defendants also dispute the finding by the trial court that this case is exceptional, and the court's award of attorney fees and costs. In an exceptional case, a court may award attorney fees. 35 U.S.C. § 285 (2000). This court reviews a district court's exceptional case finding for clear error. Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999). The criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct and unprofessional behavior. See Sensonics, Inc. v. Aerosonic Corp. 81 F.3d 1566, 1574 (Fed. Cir. 1996). "[T]he trial court has broad discretion in the criteria by which it determines whether to award attorney fees." Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1582 (Fed. Cir. 1992).

In this case, although the jury found willfulness in the first trial, the court assessed fees only from the time of the first verdict to the end of the case. The first verdict certainly placed defendants on notice of the patent, and that they were likely infringing it. Yet, the record includes evidence that the defendants sold more than one hundred thousand W2000 devices after the first trial. This court concludes, based on these facts, that the district court did not abuse its discretion in making an exceptional case finding, and awarding attorney fees for the period after the first verdict.

III.

The jury also decided the amount of damages in the first trial. Imonex initially sought lost profits and a reasonable royalty from Munzprufer as well as a reasonable royalty from the OEMs based on 26,459 W2000s sold as aftermarket or kit items. In addition, Imonex sought a reasonable royalty from the OEMs based on the entire market value of the laundry machines with the W2000. The entire market value rule "permits recovery of damages based on the value of the entire apparatus containing several features, where the patent related feature is the basis for customer demand." State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989). This measure of damages arises "where both the patented and unpatented components together are 'analogous to components of a single assembly,' 'parts of a complete machine,' or 'constitute a functional unit' but not where the unpatented components 'have essentially no functional relationship to the patented invention and . . . may have been sold with an infringing device only as a matter of convenience or business advantage.'" Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc). Before trial, however, Imonex abandoned all damages demands except the entire market value theory against the OEMs. Imonex foresaw otherwise the potential for a double recovery based on royalties from items manufactured by Munzprufer in addition to royalties on the OEM machines incorporating the same Munzprufer products. Also, before trial, Munzprufer and the OEMs moved to exclude the testimony of Imonex's damages expert on the entire market value claim.

At trial, the court asked Imonex to justify its use of the entire market value theory. Imonex first argued that a laundromat customer would have perceived that the coin selectors enhanced the performance of the washing machines as a whole. Imonex later argued that the Georgia-Pacific factors, specifically factors 8 (commercial success of a product as relevant to royalties) and 13 (distinguishing between patented and non-patented features of an infringing device or process in calculating damages) supported its theory. Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). In addition, Imonex noted that the OEMs could supply profitability data only on the entire machines.

The trial court nonetheless excluded the testimony of Imonex's witness in relation to the entire market value of the OEM equipment. Without that testimony, Imonex had no damages theory at all. Therefore, the court sua sponte allowed a claim for damages for the 26,459 W2000s sold as aftermarket or kit items.

Regardless of the court's order, Imonex expanded its arguments to include over 800,000 coin selectors that Munzprufer had incorporated into OEM machines. In effect, this theory replaced the entire market theory with another theory based on the value of the coin selectors incorporated in the OEM machines. The trial court also properly rejected expert testimony related to this theory, reminding Imonex that only the aftermarket selectors could figure into a royalty calculation. During closing argument, Imonex, ostensibly expounding on willfulness and without adequate evidence on a royalty rate beyond the 26,459 aftermarket W2000s, displayed a chart illustrating sales of 1,000,000 W2000s.

The chart proposed an average royalty of $20.73 per machine. The jury evidently followed this information in reaching an award of $10,350,000 in damages to Imonex.

The trial court, properly noting its prior limits on testimony of royalty rates for aftermarket products, rejected the jury award for lack of adequate foundation. The district court offered Imonex the choice of a remittitur of $490,295.04 -- based on the actual number of aftermarket W2000s sold by each OEM -- or a new trial. Imonex chose a new trial.

In the second jury trial, the defendants' damages expert testified about the operating income attributable to the infringing coin selectors in the laundry machines. The second jury awarded damages of $1,396,872 to Imonex. The trial court entered judgment in this amount. In addition, the trial court acknowledged the first jury's finding of willful infringement and the record that the OEMs continued to sell products with W2000s after the infringement verdict. For these reasons, the district court awarded Imonex attorney fees from the end of the first trial through the end of the case.

IV.

Imonex appeals the district court's decision to exclude testimony on the entire market value rule. This court reviews a trial court's admission or exclusion of expert testimony for abuse of discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997).

Imonex's proposed expert testimony on the entire market value rule, however, bore no relation to that rule. The entire market value rule allows

calculation of damages based on the value of an entire apparatus containing several features, when the patent-related feature is the "basis for customer demand." Rite-Hite, 56 F.3d at 1549. Without any evident record that the patented features were the basis for customer demand for the laundry machines as a whole, the trial court properly foreclosed further evidence on this unsupported theory.

Any reliance on the so-called Georgia-Pacific factors, actually a Georgia-Pacific listing, had little or no relation to Imonex's entire-value calculation in different clothing. In sum, the district court did not abuse its discretion in rejecting Imonex's expert's testimony on the entire market value theory.

Imonex also appeals the district court's finding that the record does not support the first jury's damages award of $10,350,000. A district court's duty to remit excessive damages is a procedural issue, not unique to patent law. Shockley v. Arcan, Inc., 248 F.3d 1349, 1358 (Fed. Cir. 2001). This court therefore applies the law of the Fifth Circuit for this issue. In the Fifth Circuit, a district court's decision on remittitur, as well as a decision to grant a new trial, receives review for an abuse of discretion. Vogler v. Blackmore, 352 F.3d 150, 154 (5th Cir. 2003).

During the first trial, the district court permitted Imonex to seek damages only for the 26,459 aftermarket coin selectors. The jury heard testimony, therefore, only on a royalty for these selectors. In closing argument, Imonex's attorney showed a chart with the heading "W2000s sold = 1,000,000," a table of the amounts obtained by multiplying the price at which each OEM sold W2000s

as aftermarket items by 30%, and a concluding line that read "Average 30% royalty = [$20.73]." As the trial court detected, this chart misled the jury. In fact, a 30% royalty on the $69.12 unweighted average selling price of 26,459 aftermarket W2000s would have yielded a total damages award of $548,653.82 -- about five per cent of the actual award. The record did not show any royalty for 1,000,000 W2000s, nor any showing that a 30% rate applied to those units. Therefore, the district court did not abuse its discretion in vacating the jury's damages award of $10,350,000.

Finally, Imonex appeals the district court's decision to allow the defendants' damages expert to opine in the second trial on "operating income" attributable to the coin selectors in the integrated units. The defendants defined operating income as the income attributable only to the coin selectors integrated into the laundry machines. Because in discovery for the first trial the OEMs asserted that it was impossible to accurately attribute a portion of the operating income to any individual component of a machine, Imonex asserts that testimony on this subject would be unreliable, and inadmissible. The record shows no presentation from Imonex other than the opinions of the OEMs noted above, to exclude Munzprufer's expert's testimony. The United States Supreme Court has enumerated a number of factors to assess the reliability of expert testimony. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-95 (1993). Imonex did not present any competent testimony of its own specifically addressing the Daubert factors. Therefore, this court detects no abuse of discretion in the district court's admission of Munzprufer's expert testimony.

V.

In summary, the district court did not err in denying JMOL motions on infringement and willfulness, granting a new trial on damages, excluding evidence on Imonex's entire market value theory, allowing the jury to hear Munzprufer's evidence on operational income, and awarding attorney fees. This court altogether affirms the judgments of the district court.

COSTS

Each party shall bear its own costs.

AFFIRMED