**SPREADSHEET AUTOMATION CORPORATION, Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

No. 2:05–CV–127–DF.

United States District Court, E.D. Texas, Marshall Division.

Feb. 23, 2007.

Stephen D. Susman, Harry Paul Susman, Richard Wolf Hess, Susman Godfrey, LLP, Houston, TX, Andrew Wesley Spangler, Elizabeth L. Derieux, Sidney Calvin Capshaw, III, Brown McCarroll, Longview, TX, Edward E. Casto, Jr. Edward R. Nelson, III, Jonathan T. Suder, Friedman, Suder & Cooke, Fort Worth, TX, Franklin Jones, Jr., Jones & Jones, Marshall, TX, Otis W. Carroll, Jr., Ireland, Carroll & Kelley, Tyler, TX, for Plaintiff.

David J. Healey, John Lane, Weil, Gotshal & Manges, Houston, TX, G. William Lavender, Lavender Law, Texarkana, AR, Harry Lee Gillam, Jr., Gillam & Smith, LLP, Marshall, TX, Jared B. Bobrow, AMatthew Douglas Powers, Steven C. Carlson, Thomas B. King, Weil, Gotshal & Manges, Matthew M. Sarboraria, Oracle Corp., Redwood Shores, CA, for Defendant.

## ORDER

DAVID FOLSOM, District Judge.

Before the Court is Defendant's Motion to Exclude the Testimony of N. Elton Dry, to which Plaintiff has responded and Defendant has replied. Dkt. Nos. 96, 127 & 137. Also before the Court is Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini, to which Plaintiff has responded and Defendant has replied. Dkt. No. 98, 109 & 117. Defendant also filed supplemental motions to exclude these experts, and Plaintiff filed a consolidated response, to which Defendant filed a consolidated reply. Dkt. Nos. 123, 124, 134 & 142. The Court held a hearing on February 14, 2007. Having considered the briefing, arguments of counsel, and all rel-

evant papers and pleadings, the Court finds that Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini (Dkt. No. 98) should be **GRANTED IN PART** as to consent decrees, settlements, and licenses made under the threat of litigation, and this motion should be otherwise **DENIED IN PART.** The Court further finds that Defendant's remaining motions (Dkt. Nos. 96, 123 & 124) should be **DENIED.**

## I. BACKGROUND

Plaintiff brings this patent infringement action against Defendant for alleged infringement of United States Patent No. 5,033,009 (the "'009 Patent"). Complaint, Dkt. No. 1 at ¶ 5. In particular, Plaintiff accuses Defendant's "Access" and "Excel" products of infringement. *Id.* at ¶ 7. Plaintiff originally asserted infringement of Claims 1, 2, 3, 5, 6, and 7. The Court entered its Claim Construction Order on November 9, 2006. Dkt. No. 72. Following an exchange of summary judgment briefing, the parties stipulated to invalidity of Claims 1, 2, 3, and 5, and Plaintiff now only asserts Claims 6 and 7. *See* Dkt. Nos. 118 & 120.

Defendant seeks to exclude certain testimony of Plaintiff's damages expert, Joseph Gemini ("Mr. Gemini"), and Plaintiff's willfulness expert, N. Elton Dry ("Mr. Dry"). Plaintiff raised some dispute as to whether Defendant's motions may properly be considered motions to exclude expert testimony pursuant to *Daubert.* 509 U.S. 579, 113 S.Ct. 2786. In its motions, Defendant cites Federal Rule of Evidence 702 and clearly questions the methodology and principles of Plaintiff's experts. Dkt. Nos. 96 at 5 & 98 at 4. The Court therefore properly treats Defendant's motions as *Daubert* motions to exclude expert testimony.

The Court considers first whether the expert testimony is proper and then addresses the parties disputes as to the appropriate scope of evidence on damages, the propriety of testimony on willfulness, the state of mind required to prove inducement, and laches.

## II. LEGAL PRINCIPLES

Federal Rule of Evidence ("Rule") 702 requires that any expert be qualified to testify by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Specifically, Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
>
> (1) the testimony is based upon sufficient facts or data,
>
> (2) the testimony is the product of reliable principles and methods, and
>
> (3) the witness has applied the principles and methods reliably to the facts of the case.

Any such testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* When faced with a proffer of expert testimony, it is the trial judge's responsibility to determine, at the outset, whether the expert is proposing to testify to expert knowledge and whether such testimony will assist the trier of fact to understand or determine a fact in issue. *Id.*; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In this regard, the trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786; *Kumho Tire Co., Ltd. v. Carmicha-*

*el*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

To constitute expert knowledge that will "assist the trier of fact," the proposed testimony must be both relevant and reliable. *E.I. duPont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1996). The trial judge's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id.* at 558. Relevant testimony is that which is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 556 (quotation omitted). "In addition to being relevant, the underlying scientific technique or principle must be reliable. Scientific evidence which is not grounded 'in the methods and procedures of science' is no more than 'subjective belief or unsupported speculation.'" *Id.* at 557 (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786).

### III. THE PARTIES' POSITIONS

### A. Damages

Defendant argues that Mr. Gemini's royalty calculations improperly: (1) use settlement licenses to arrive at a royalty rate; (2) include revenue from non-accused products, as well as non-accused features of accused products; and (3) include sales outside the U.S. Dkt. No. 98 at 4. Defendant argues that Mr. Gemini improperly invokes the "entire market value" doctrine because Plaintiff has not shown that "the patent related feature is the basis for customer demand." *Id.* at 9 (quoting *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir.2005)).

In response, Plaintiff cites the rejection of purportedly similar arguments by Defendant in *Eolas Techs. Inc. v. Microsoft Corp.*, 70 U.S.P.Q.2d 1939, 2004 WL 170334, 2004 U.S. Dist. LEXIS 534 (N.D.Ill. Jan. 14, 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed.Cir. 2005). Dkt. No. 109 at 5. Plaintiff argues, for example, that Defendant "markets Office as the type of 'functional unit' that justifies use of an entire market value damages theory." *Id.* at 12. Plaintiff distinguishes *Imonex* by arguing that "[r]oyalty-based damages were allowed only on the aftermarket units ostensibly because there was no evidence presented of [the accused component's] value (when incorporated as a component) relative to the [accused] machines as a whole." *Id.* at 14. As to revenue from foreign sales, Plaintiff argues that the Federal Circuit has ruled that "every form of invention eligible for patenting falls within the protection of [35 U.S.C.] section 271(f)." *Id.* at 15 (quoting *Eolas*, 399 F.3d at 1339; discussing *Union Carbide v. Shell*, 425 F.3d 1366, 1380 (Fed. Cir.2005)). As to settlement licenses, Plaintiff argues that *Rude v. Westcott*, 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888 (1889), is distinguishable because the plaintiff in that case used only a single settlement and because Mr. Gemini does not use settlement licenses as a standard to measure the "value" of the '009 Patent. *Id.* at 17.

Defendant replies that "the plaintiff *in this lawsuit* ... has failed to make any showing that the accused functionalities drive customer demand for Excel, Access, or, especially, Office." Dkt. No. 117 at 2. As to worldwide sales, Defendant argues that *Union Carbide* "only held that process claims *could* be infringed under Section 271(f)(2), and remanded for a finding as to whether the facts of that case justified liability for the exportation." *Id.* at 4 (discussing 425 F.3d 1366). As to Section 271(f)(1), Defendant argues that "the asserted claims do not cover an apparatus and thus cannot be applied to the combination of 'components'" in this case. *Id.* at 5 (distinguishing *AT & T Corp. v. Microsoft Corp.*, 414 F.3d 1366 (Fed.Cir.2005) & *Eo-*

*las v. Microsoft,* 399 F.3d 1325 (Fed.Cir. 2005)).

## B. Willfulness

Defendant argues that Mr. Dry's willfulness opinions improperly invade the provinces of the jury, by opining on Defendant's intent, and of the Court, by instructing the jury on the law of willfulness. Dkt. No. 96; *see* Expert Report of N. Elton Dry, Dkt. No. 96 at Exh. A.

Plaintiff responds that experts may properly testify on ultimate issues of fact. Dkt. No. 127 at 3. Further, Plaintiff argues that "Mr. Dry's opinions regarding Defendant's conduct—its knowledge of the '009 Patent and what reasonable patent counsel and corporations would have done with the knowledge—are proper subjects of expert testimony." *Id.* at 5. Plaintiff notes that Mr. Dry can "explain[ ] the technical aspects of patent prosecution, describing how, when, and why Defendant would have received notice of the '009 patent in 1992." *Id.* at 6.

## C. Supplemental Briefing

Defendant has filed a supplemental motion to exclude Mr. Gemini's testimony, arguing that: "(1) Mr. Gemini cannot support his claims for damages prior to March 28, 2005 on a theory of inducing infringement because Defendant had no notice of SAC's infringement allegations prior to that date; and (2) laches bar SAC's damages." Dkt. No. 124 at 1. Defendant argues that Plaintiff has not produced evidence of "specific intent" to infringe prior to Plaintiff filing suit on March 28, 2005 because prior to that date Defendant had no reason to believe it might be infringing the '009 Patent. *Id.* at 3 (quoting *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1305 (Fed.Cir.2006)). Defendant argues that because it had reason to believe the claims of the '009 patent were invalid, it could not have had specific intent to infringe. *Id.* at 4–5. Defendant also argues

that because Plaintiff waited to file suit until over twelve years after it alleges Defendant started infringing, laches bars pre-filing damages. *Id.* at 5–6.

Plaintiff responds that as to the intent element of inducement, it need only prove Defendant "should have known" that its acts would induce infringement, and Plaintiff argues it may do so with "circumstantial evidence." Dkt. No. 134 at 8–11 (quoting *DSU,* 471 F.3d at 1306). Plaintiff argues there is sufficient circumstantial evidence because Plaintiff "presents evidence: (1) [Defendant] clearly knew about the '009 Patent; and (2) [Defendant] encouraged and consciously promoted the uses of Excel that [Plaintiff] claims infringe[ ]." *Id.* at 10–11. As to the presumption of laches, Plaintiff responds that Defendant has not established the requisite predicate fact that the patent owner knew of Defendant's alleged infringement. Plaintiff further argues that this is a question of fact, and even if Defendant establishes a presumption of laches, Plaintiff may rebut that presumption by showing lack of prejudice to Defendant, showing good cause for delay, or showing that Defendant "engaged in particularly egregious behavior." *Id.* at 12 (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1033 (Fed.Cir.1992)).

Defendant replies that its purported knowledge of the '009 Patent is insufficient evidence of specific intent. Dkt. No. 142 at 4. Defendant further argues it could not have formed such intent as to Claims 6 and 7 because these claims have only recently been "narrowed" to avoid invalidity based on "a limitation not in the claims themselves, but added during claim construction." *Id.* at 5. As to laches, Defendant argues Plaintiff has presented no evidence of "egregious conduct." *Id.* at 5–6.

Defendant has filed a supplemental motion to exclude Mr. Dry, arguing that: "(1)

Mr. Dry cannot support his claims for damages for willful infringement; and (2) laches bar SAC's damages." Dkt. No. 123 at 1. Defendant asserts the same supplemental arguments here as in its supplemental motion to exclude Mr. Gemini's testimony. *See* Dkt. No. 124, discussed *supra.*

## IV. DISCUSSION

Messrs. Gemini and Dry have substantial expertise in their respective areas of damages and willfulness, and the parties do not appear to dispute their qualifications. *See* Expert Reports, Dkt. No. 96, Exh. A at ¶¶ 5–7 & Dkt. No. 99, Exh. B at ¶¶ 3–7.

### A. Damages

■ "The amount of damages based on a reasonable royalty is an issue of fact." *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1394 (Fed.Cir.2003). Defendant disputes Mr. Gemini's use of settlements as evidence of a reasonable royalty, his application of the entire market value doctrine, and his inclusion of foreign sales of products accused of infringement.

#### 1. Settlements as Evidence of Reasonable Royalty

■ "[A] payment of any sum in settlement of a claim for alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude,* 130 U.S. at 164, 9 S.Ct. 463. "Many considerations other than the value of the improvements patented may induce the payment in such cases." *Id.* "The avoidance of the risk and expense of litigation will always be a potential motive for a settlement." *Id.* "In order that a royalty may be accepted as a measure of damages against an infringer, who is a stranger to the license establishing it, it must be paid or secured before

the infringement complained of ...." *Id.* at 165, 9 S.Ct. 463. Licenses based on "offers [that] were made after the infringement had begun and litigation was threatened or probable ... should not be considered evidence of an established royalty, since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078–79 (Fed.Cir.1983) (citations and quotations omitted).

■ Settlements that are *not* entered into to avoid litigation may be probative of a reasonable royalty. *Studiengesellschaft Kohle v. Dart Indus.,* 862 F.2d 1564, 1572 (Fed.Cir.1988) (allowing evidence of settlement where patent had already been adjudged valid and infringed by the defendant). As to Mr. Gemini's reliance upon the jury's findings in *Amado v. Microsoft Corp.,* such findings are probative because they are not "under a threat of litigation" but rather appear to have occurred after findings of validity and infringement. *Id.;* see Dkt. No. 99, Exh. B at 33–34. Defendant has not shown that evidence of judgements should be excluded, and the Court therefore declines to do so.

The Court received letter briefing dated February 16, 2007, in which Plaintiff submits that for purposes of "perspective," it is "acceptable for Mr. Gemini to have considered such licenses/verdicts in connection with a reasonable royalty analysis." Defendant responded, in letter briefing dated February 20, 2007, that settlement agreements are not appropriate for "context" and that "no evidence or testimony in any form should be permitted in front of the jury ... of prior settlements, resolutions, or rulings from other lawsuits." Defendant proposed that Mr. Gemini's entire report should be excluded for this reason.

■ Evidence of consent decrees, settlements, and licenses made under the threat of litigation, offered for the purpose of "perspective" or "context," would likely confuse the jury, and the jury would be unlikely to consider such evidence only as "context" for a reasonable royalty. The Court therefore finds that such testimony, even if offered for the purportedly limited purpose of context, is inadmissible under Federal Rule of Evidence 403.[1] As to whether the entire report should be excluded, the Court finds that because Mr. Gemini does not rely exclusively upon settlement agreements reached under threat of litigation,[2] he may properly *consider* such royalty rates and the underlying agreements in the formation of an opinion." *ACCO Brands, Inc. v. ABA Locks Mfr. Ltd.*, Civil Action No. 2:02–CV–112, Dkt. No. 196, 2004 WL 5492840 (May 17, 2004) (Ward, J.)

The Court therefore finds that evidence of consent decrees, settlements, and licenses made under the threat of litigation would not be proper evidence of Plaintiff's damages to present to the jury. Defendant's motion to exclude Mr. Gemini's testimony on this issue should be granted. However, Defendant has not justified exclusion of other evidence, such as judgments or licenses not reached under threat of litigation. Defendant's motion is therefore otherwise denied.

## 2. Entire Market Value Doctrine

Defendant argues both that the "entire market value doctrine" is inapplicable and that, even if applicable, Mr. Gemini incorrectly applies the doctrine.

### (a) Applicability of the Entire Market Value Doctrine

■ "The entire market value rule 'permits recovery of damages based on the value of the entire apparatus containing several features, where the patent related feature is the basis for customer demand.'" *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1379 (Fed.Cir.2005) (quoting *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed.Cir.1989)). "This measure of damages arises where both the patented and unpatented components together are analogous to components of a single assembly, parts of a complete machine, or constitute a functional unit but not where the unpatented components have essentially no functional relationship to the patented invention and ... may have been sold with an infringing device only as a matter of convenience or business advantage." *Id.* (quoting *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed.Cir.1995) (en banc)).

■ In support of its motion, Defendant relies upon the Federal Circuit's decisions in *Imonex* and *Rite–Hite*. Dkt. No. 98 at 9–11 (discussing *Imonex*, 408 F.3d 1374 &

1. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

2. Defendant argues that "Mr. Gemini impermissibly relies on a "cross-license agreement between Microsoft and Inprise Corporation (now known as Borland) ...." Dkt. No. 98 at 14. Defendant argues this license is improper evidence for Mr. Gemini to rely upon because it was "made under circumstances that are sharply and fundamentally different" from the present case. *Id.* at 15 (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1137 (S.D.N.Y.1970)). This argument goes to weight rather than admissibility. Because Defendant does not submit that this license agreement was influenced by any litigation, the Court considers this license an example of a non-litigation-related license that supports Mr. Gemini's opinion.

*Rite–Hite,* 56 F.3d 1538). In response, Plaintiff relies upon *Eolas.* Dkt. No. 109 at 6–13 (discussing *Eolas,* 2004 WL 170334, 2004 U.S. Dist. LEXIS 534).[3]

In *Eolas,* the court considered whether to allow the plaintiff to apply the entire market value doctrine to an invention involving "automatic invocation of an application" related to Defendant's Windows and Internet Explorer products. 2004 WL 170334, at *2, 2004 U.S. Dist. Lexis 534, at *7. In the present case, Plaintiff analogously accuses a particular functionality of Defendant's Excel (and, in turn, Office) products. The court in *Eolas* noted that Defendant "bundles together all of its Windows functionality as seamlessly as it can," and the court found that "the bundling makes it very difficult for either party to assess the value of each individual component." *Id.* at *2, 2004 U.S. Dist. Lexis 534, at *6. In the present case, Plaintiff similarly argues that the accused instrumentality is a component whose value cannot be accurately assessed because of Defendant's practice of bundling. *See* Dkt. No. 109 at 12. The court in *Eolas* opined that "[s]ince [Defendant] has created this difficulty for itself, it must bear the legal risks attendant to its way of business." *Id.* at *2, 2004 U.S. Dist. Lexis 534, at *6–7.

*Imonex* is distinguishable from the present case because the plaintiff in *Imonex* accused a comparatively discrete instrumentality that was available as an "after-market" product. The plaintiff in *Imonex* therefore had the ability to show a reasonable royalty on sales of accused devices in the after-market. In the present case, by contrast, Plaintiff accuses a method of using Defendant's PivotTables functionality, which is part of Defendant's Excel product, among others. In *Imonex,* the defendant argued in its briefing that it sold

products "both with and without a coin selector ...." Dkt No. 109 at Exh. K. Here, neither party has shown that an after-market exists for PivotTables or that PivotTables is otherwise available separately.

For all of these reasons, the Court finds that the accused functionality of PivotTables has a "functional relationship to the patented invention" such that the entire market value doctrine may be applied. *Imonex,* 408 F.3d at 1379. Whether the "patent related feature is the basis for customer demand" is a matter for the finder of fact. *Id.* (quoting *State v. Mor–Flo,* 883 F.2d at 1580). The Court therefore finds the entire market value doctrine applicable to Plaintiff's claim.

### (b) Mr. Gemini's Application of the Entire Market Value Doctrine

Defendant also argues that Mr. Gemini's analysis is a misapplication of the entire market value doctrine. Specifically, Defendant argues Mr. Gemini "bases his damage opinion on revenues from licenses for entire products" and "combines the revenue for products that have no features accused of infringement together with those products that do include features accused of infringement." Dkt. No. 98 at 6. For example, Defendant notes that Mr. Gemini's analysis includes "0.50% of all licenses that include Excel, whether those licenses also include other products or not ...." *Id.* at 7.

Here again, *Eolas* is analogous to the present case. The accused functionality of PivotTables is "bundl[ed]" with Defendant's Excel product, which "makes it very difficult for either party to assess the value" of that particular functionality. 2004 WL 170334, at *2, 2004 U.S. Dist. Lexis

---

**3.** Plaintiff also cites a brief in support of a motion for judgment as a matter of law on damages filed before Judge David O. Carter of the Central District of California, Southern Division, in *Amado v. Microsoft Corp.,* SACV 03–242. *See* Dkt. No. 98 at Exh. C.

534, at \*6. *Eolas* is persuasive on this issue, and the Court also finds the present case analogous to *State v. Mor–Flo*, in which the Federal Circuit affirmed the trial court's application of the entire market value doctrine where "no components [could] be used separately." 883 F.2d at 1580. The entire market value doctrine simply allows the finder of fact to consider the value of the product as a whole when calculating damages. *See TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed.Cir.1986) ("Where a hypothetical licensee would have anticipated an increase in sales of collateral unpatented items because of the patented device, the patentee should be compensated accordingly.") In response, Defendant may properly present evidence of the "unique value [of] other components" of its accused products. *State v. Mor–Flo*, 883 F.2d at 1580. To the extent Defendant bundles products incorporating the accused functionality of PivotTables with other non-accused functionalities and products, the finder of fact may consider such evidence in calculating damages.

Because Plaintiff properly invokes and applies the entire market value doctrine, Defendant's motion to exclude Mr. Gemini's corresponding testimony should be denied.

### 3. Damages from Foreign Sales

Defendant argues that Mr. Gemini cannot testify as to damages based on infringement resulting from foreign sales because 35 U.S.C. § 271(f) does not provide damages for foreign infringement of method claims. The Court need not resolve the availability of damages for foreign infringement at this stage because at trial the jury may, on a special verdict form, enter separate figures for domestic and foreign infringement. Because this dispute would thus be better addressed by post-trial motion, Defendant's motion to exclude testimony related to foreign infringement should be denied.

### B. Willfulness

■ Whether a defendant committed willful infringement is a question of fact. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed.Cir.1995); *see also Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed.Cir.1989) ("Willfulness of behavior is a classic jury question of intent. When trial is had to a jury, the issue should be decided by the jury.") (citations omitted). A plaintiff has the burden of proving willfulness by clear and convincing evidence. *Pall*, 66 F.3d at 1221; *SRI Int'l v. Advanced Technology Labs.*, 127 F.3d 1462, 1465 (Fed.Cir.1997).

Plaintiff's counsel represented at the hearing on this matter that Mr. Dry would not testify directly as to Defendant's subjective intent. Based on this representation, the Court finds that Mr. Dry's testimony on willfulness will not invade the province of the jury. In his expert report, Mr. Dry provides expertise on patent prosecution that may be helpful to the jury in deciding what Defendant knew, when it knew it, and what intent its actions may therefore reflect. *See* Dkt. No. 99, Exh. A at ¶¶ 20–25. The jury must ultimately decide whether Defendant had the requisite intent to support a finding of willfulness.

■ As to the law of willfulness, "questions which would merely allow the witness to tell the jury what result to reach are not permitted." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Id.* The Court shall instruct the jury on the law of willfulness. Nevertheless, Mr. Dry may testify as to his opinion on underlying facts that Plain-

tiff must prove to sustain a finding of willfulness.

## C. Supplemental Issues

### 1. Showing of Intent Required to Prove Inducement to Infringe

■ Defendant argues that Plaintiff's evidence of pre-suit damages must be excluded because Plaintiff cannot show that Defendant had the requisite intent to induce infringement. Proof of inducement to infringe "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU*, 471 F.3d at 1306 (Fed. Cir.2006) (citing *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) & *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir. 1990)). The Federal Circuit upheld the following instruction given by the trial court:

> In order to induce infringement, there must first be an act of direct infringement and proof that the defendant knowingly induced infringement with the intent to encourage the infringement. The defendant must have intended to cause the acts that constitute the direct infringement and must have known or should have known than [sic] its action would cause the direct infringement.

*DSU*, 471 F.3d at 1305. "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* at 1306 (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988)). "Intent is a factual determination particularly within the province of the trier of fact." *Water Techs.*, 850 F.2d at 668–69 (quoting *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed.Cir.1988)). Defendant acknowledges that the United States Patent and Trademark Office cited the '009 Patent as prior art on other patent applications filed by Defendant. Dkt. No. 142 at 3–4.

■ Because a reasonable jury could find the requisite intent from Defendant's knowledge of the '009 Patent, viewed in light of the accused functionality, Mr. Gemini should not be precluded from testifying as to pre-suit damages. Similarly, Mr. Dry should not be precluded from testifying as to willfulness because Defendant has not shown that Plaintiff cannot establish the requisite intent.

### 2. Whether Laches Bars Pre–Suit Damages

■ Defendant further seeks to exclude evidence of pre-suit damages based on laches. To succeed on the equitable defense of laches, a defendant must prove the following elements by a preponderance of the evidence: (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) that the delay operated to the prejudice or injury of the defendant. *A.C. Aukerman Co.*, 960 F.2d at 1028, 1032 & 1045. Whether the length of time is unreasonable has no fixed boundaries but rather depends on the circumstances. *Id.* A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity. *Id.* at 1028. A court must also consider and weigh any justification offered by the plaintiff for its delay, such as whether the plaintiff was in negotiations with the defendant. *Id.* at 1033.

■ The parties dispute at what point in time the patent owner knew or should have known of Defendant's allegedly infringing activity. The Court therefore declines to apply laches, at the pre-trial

stage, as a bar to pre-suit damages. Alternatively, the Court notes that the presumption of laches, even once established, may be rebutted. Defendant's motion to exclude testimony by Messrs. Gemini and Dry as to pre-suit damages should therefore be denied.

## V.  CONCLUSION

Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini (Dkt. No. 98) is hereby **GRANTED IN PART** as to consent decrees, settlements, and licenses made under the threat of litigation, and this motion is otherwise **DENIED IN PART.**

Defendants' Motion to Exclude the Testimony of N. Elton Dry (Dkt. No. 96), Defendant's Supplemental Motion to Exclude the Expert Testimony of N. Elton Dry (Dkt. No. 123), and Defendant's Supplemental Motion to Exclude the Expert Opinion of Joseph Gemini (Dkt. No. 124) are hereby **DENIED.**